FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 12 2010 ★
BROOKLYN OFFICE

TM:JDB
F.#2008R01379

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ANTHONY ANTICO,
    also known as "Tony O,"
  "Big Nose" and "Tico,"

            Defendant.

- - - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 08-559 (S-6)(CBA)
(T. 18, U.S.C., §§
924(c)(1)(A)(i),
924(c)(1)(A)(ii),
924(c)(1)(A)(iii),
1951(a), 1955, 1962(d),
1963, 2 and 3551
et seq.)

THE GRAND JURY CHARGES:

INTRODUCTION

      At all times relevant to this Superseding Indictment, unless otherwise indicated:

The Enterprise

      1.   The members and associates of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese family") constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, that engaged in, and the activities of which affected, interstate and foreign commerce. The Genovese family constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Genovese family was an organized criminal group that operated in the Eastern District of New York and other parts of the United States.

2

2. The Genovese family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Genovese family, who were also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Genovese family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Genovese family. The head of the Genovese family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and the consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Genovese family and members of other criminal organizations, and approving all significant actions taken by members of the Genovese family.

5. The boss, underboss and consigliere of the Genovese family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and

3

disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Genovese family. In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew. From time to time, members of the Genovese family were temporarily appointed to the positions of boss, underboss, consigliere or captain, and functioned in an "acting" capacity for incarcerated or otherwise incapacitated members of the Genovese family.

    6. The Genovese family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "Commission," the membership of which at various times has included the bosses of the five New York-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese Organized Crime Families. La Cosa Nostra also included other crime families based in other geographic areas, including the DeCalvacante Organized Crime Family, which principally operated in New Jersey.

    7. From time to time, the Genovese family would propose a list of associates to be "made," that is, to become members of the Genovese family. This list would be circulated for approval to other families based in New York City. Upon

4

becoming "made," each member would take an oath of "omerta," that is, a vow never to reveal any information about the Genovese family, its members or its associates.

The Purposes, Methods and Means of the Enterprise

8. The principal purpose of the Genovese family was to generate money for its members and associates. This purpose was implemented by members and associates of the Genovese family through various criminal activities, including loansharking, extortion, illegal gambling, robbery and burglary. The members and associates of the Genovese family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Genovese family was to generate money for its members and associates, the members and associates at times used the resources of the Genovese family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Genovese family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Genovese family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of

proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Genovese family often coordinated street-level criminal activities, such as robbery, extortion and loansharking, with members and associates of other organized crime families of La Cosa Nostra.

<u>The Defendant</u>

12. At various times relevant to this Superseding Indictment, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," was a captain, soldier and associate within the Genovese family.

COUNT ONE
(Racketeering Conspiracy)

13. The allegations of paragraphs one through twelve are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between January 1996 and December 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," together with others, being a person employed by and associated with the Genovese family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce,

6

did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

15.   The pattern of racketeering activity through which the defendant ANTHONY ANTICO, together with others, agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below.  The defendant agreed to the commission of at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Extortion and Extortion Conspiracy - John Doe #1)

16.   The defendant ANTHONY ANTICO, together with others, agreed to the commission of one or more of the following acts, any one of which alone constitutes racketeering act one:

A.   Hobbs Act Extortion Conspiracy

17.   In or about and between 1996 and 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: property belonging

7

to John Doe #1, an individual whose identity is known to the Grand Jury, with the consent of John Doe #1, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.  Extortion

18.  In or about and between 1996 and 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: property belonging to John Doe #1, with the consent of John Doe #1, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a) and 2.

RACKETEERING ACT TWO
(Illegal Gambling)

19.  In or about and between 2004 and 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal

card games, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

RACKETEERING ACT THREE
(Robbery Conspiracy/Attempted Robbery - Louis Antonelli)

20.  The defendant ANTHONY ANTICO, together with others, agreed to the commission of one or more of the following acts, any one of which alone constitutes racketeering act three:

A.   Hobbs Act Robbery Conspiracy

21.  On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of jewelry from Louis Antonelli, in violation of Title 18, United States Code, Section 1951(a).

B.   Hobbs Act Attempted Robbery

22.  On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the

Eastern District of New York, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of jewelry from Louis Antonelli, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.  State Law Robbery Conspiracy

23. On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: jewelry from Louis Antonelli, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

D.  State Law Attempted Robbery

24. On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally attempt to forcibly steal property, to wit: jewelry from Louis Antonelli, in violation of New York Penal Law Sections 160.05, 110.00 and 20.00.

10

## RACKETEERING ACT FOUR
(Larceny by Extortion Conspiracy/Robbery Conspiracy
- John Doe #2)

25. The defendant ANTHONY ANTICO, together with others, agreed to the commission of one or more of the following acts, either one of which alone constitutes racketeering act four:

A. <u>State Law Extortion Conspiracy</u>

26. In or about and between June 2008 and July 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conspire to steal property by instilling in John Doe #2, an individual whose identity is known to the Grand Jury, fear that a person would cause physical injury to John Doe #2 in the future, in violation of New York Penal Law, Sections 155.40(2) and 105.10.

B. <u>State Law Robbery Conspiracy</u>

27. On or about and between June 2008 and July 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, together with others, did knowingly and intentionally conspire to forcibly steal property from John Doe #2, while aided by another

11

person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWO
(Illegal Gambling)

28. In or about and between 2004 and 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

12

## COUNT THREE
(Robbery Conspiracy)

29. On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of jewelry from Louis Antonelli.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT FOUR
(Attempted Robbery)

30. On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of jewelry from Louis Antonelli.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

13

## COUNT FIVE
(Using and Carrying a Firearm)

31. On or about and between April 1, 2008 and April 29, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ANTHONY ANTICO, also known as "Tony O," "Big Nose" and "Tico," together with others, did knowingly and intentionally possess a firearm in furtherance of one or more crimes of violence, to wit: the crimes charged in Counts One, Three and Four, and, together with others, did knowingly and intentionally use and carry a firearm during and in relation to said crimes of violence, which firearm was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34

CR. No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

THE UNITED STATES OF AMERICA

vs.

ANTHONY ANTICO,

Defendant.

CR. NO. __08-559 (S-6)__

## INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 1951(a), 1955, 1962(d), 1963, 2 and 3551 et seq.)

A true bill.

_____
Foreman

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

*AUSA JOHN BURETTA, (718) 254-6314*

CB.H

## INFORMATION SHEET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 12 2010 ★

BROOKLYN OFFICE

08-CR-559 (S-6)
(CBA)

1. Title of Case: __U.S. v. ANTHONY ADTICO__

2. Related Magistrate Docket Number(s) _____

   None (X)

3. Arrest Date: _____

4. Nature of offense(s):   ✓ Felony
                              Misdemeanor

5. Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules): _____

6. Projected Length of Trial:   Less than 6 weeks  (X)
                                 More than 6 weeks  ( )

7. County in which crime was allegedly committed: __KINGS__
   (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8. Has this indictment/information been ordered sealed?   ( ) Yes  (X) No

9. Have arrest warrants been ordered?   ( ) Yes  (X) No

10. Is there a capital count included in the indictment?   ( ) Yes)  (X) No

BENTON CAMPBELL
UNITED STATES ATTORNEY

By: _____
JOHN CURETTA
Assistant U.S. Attorney
(718) 254-6314

Rev. 3/22/01