UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
UNITED STATES OF AMERICA,

                                                            MEMORANDUM & ORDER
-against-                                             08 CR 559 (S-6) (CBA)

ANTHONY ANTICO,

                Defendants
----------------------------------------------x

AMON, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

The government has moved to empanel an anonymous and partially sequestered jury for the trial of this case. Specifically, it requests that "identities of all prospective jurors – including names, addresses, and places of employment – not be revealed to either the parties or their attorneys," and that "from the time each juror is empaneled until the conclusion of the trial, the jurors be escorted by representatives of the United States Marshals Service to and from the courthouse each day and at all times during recesses." (Govt. May 12, 2010 Motion at 1, Docket Entry 182). The defendant, Anthony Antico ("Antico"), argues that selection of an anonymous jury deprives him of his rights under the Fifth and Sixth Amendments. Although he concedes that the law in the Second Circuit permits the court to select an anonymous jury in an appropriate case, Antico contends that this is not such a case.[1] For the reasons set forth below, the government's motion is granted.

---

[1] To preserve the issue, Antico also urges this Court to declare that any use of an anonymous jury violates the Fifth and Sixth Amendments of the United States Constitution. He recognizes, however, that this Court is bound by the decisions of the Second Circuit upholding the use of anonymous juries in the appropriate circumstances.

## DISCUSSION

The legal principles governing selection of an anonymous jury are well-settled. An anonymous jury is appropriate only where (1) there is a strong reason to believe that the jury needs protection, and (2) reasonable precautions are taken to minimize the effects of such a decision on the defendants and to ensure that their fundamental rights are protected. United States v. Thai, 29 F.3d 785, 800 (2d Cir. 1994); United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985). Within those parameters, however, the decision whether or not to empanel an anonymous jury is within the discretion of the trial court. United States v. Paccione, 949 F.2d 1182, 1192 (2d Cir. 1991); United States v. Persico, 1994 WL 150837 at *1 (E.D.N.Y. Apr. 20, 1994).

A review of the relevant case law highlights a number of factors that are usually taken into consideration when determining whether or not the jury needs the protection of anonymity. These include (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the judicial process by himself or through his associates; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair. United States v. Cacace, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004); see also Thai, 29 F.3d at 801, Thomas, 757 F.2d at 1364-66; Paccione, 949 F.2d at 1192; United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979); Persico, 832 F.2d at 717.

The Court turns to an analysis of the relevant factors, beginning with the seriousness of the charges. As Antico concedes, "[t]here is no question that the charges in the instant matter are

serious." Def.'s Opp. Mem. at 5 (Docket Entry 187). The superseding indictment alleges that Antico is a longtime member and high-ranking captain in the Genovese organized crime family of La Cosa Nostra, and charges him with racketeering conspiracy, illegal gambling, robbery conspiracy, attempted robbery and using and carrying a firearm. The predicate acts of the racketeering charge includes extortion and extortion conspiracy, illegal gambling, robbery conspiracy and attempted robbery. If convicted, the defendant faces a substantial prison term. Indeed, Antico is nearly 74 years old and a conviction would likely put him in prison for the rest of his life – such a substantial prison term provides Antico with an incentive to tamper with the jury. See United States v. Locascio, 357 F. Supp.2d 558, 561 (noting that the defendants were not "young men, and the substantial prison terms and financial penalties they face provide a motive to tamper with the jury").

Although as noted, Antico acknowledges that these charges are serious, he nonetheless argues that the government lacks any substantial evidence to support the "most serious charge" in the indictment – the attempted robbery of Louis Antonelli.[2] Def. Opp. Mem. at 6. He notes that the government did not charge Antico until "almost 2 years after the crime and a year and one-half after there were two cooperating witnesses." Since it is anticipated that an accomplice will directly implicate Antico in the crime, the Court is not persuaded by Antico's characterization of the government's evidence as weak. In any event, a conviction on the other charges would still likely

---

[2] Antico also argues that the government's evidence suggests he played only a "tangential" role in the Antonelli robbery. The government's theory of the case, however, asserts that Antico's role was anything but tangential. Indeed, the government alleges that Antico ordered the crime to be committed and claims that the evidence will show that Antico "personally conceived of the plan to rob Antonelli and directed others to carry it out". Govt. Reply Mem. at 3.

3

result in the defendant being sentenced to prison for the rest of his life

The second factor to be considered is the dangerousness of the defendant. As previously set forth, the indictment charges that Antico was a captain in the Genovese crime family, a notoriously violent criminal enterprise. Antico's alleged position in the Genovese family is relevant not only to his own dangerousness, but, as discussed more fully below, to his ability to interfere with the judicial process. Antico's counsel challenges the claim that Antico was a "captain". (6/4/10 Letter, Docket Entry 197). In support of his objection, Antico attached a September 2, 2009 letter from co-counsel Matthew J. Mari, Esq. to the EDNY Probation Department, stating that FBI Agent Michael Campi, on cross-examination at a detention hearing before the Hon. Robert M. Levy, United States Magistrate Judge, stated that no organized crime figure had informed Agent Campi that Antico was, in fact, a "captain". The Court has reviewed the transcript of the detention hearing and is not persuaded that Mr. Mari's memory captures the proceedings. On cross, Agent Campi testified that it was his belief that Antico's position was "identified in recordings" with an informant and that conversations "characterized him as a captain." 4/7/05 Detention Hr'g Tr. at 177-178. Agent Campi went on to testify:

> A. I believe we drove with Sammy and Vinnie Aparo with Anthony Antico at his club out in Brooklyn. During that car ride I believe Sammy Aparo identified who Tico was, that he was actually a captain in the family, that John Giglio, the circumstances of the D'Acunto's, would be resolved by meeting with Tico. That is the recollection I have.
>
> Q. You say that in court —
>
> A. A made guy identifying Tico as a captain.
>
> Q. I read all the reports. I didn't see that one.

4

A. That's my recollection.

4/7/05 Detention Hr'g Tr. at 181. In any event, the government has proffered evidence that two cooperating witnesses will testify to Antico's status as a captain at trial.[3] Accordingly, the Court finds it appropriate to consider Antico's position as a captain in the Genovese family for purposes of this motion. Antico's alleged rank in the Genovese family and the fact that he is charged with committing three crimes of violence lend credence to the government's argument that he is dangerous. Further, although Antico argues that he cannot be dangerous because he "has been in Federal prison for most of the last five years," the government's allegations that Antico has actively directed the affairs of his Genovese crew from prison undermines this argument.

The third factor to consider is whether Antico has the ability to interfere with the judicial process by himself or through his associates. Although Antico's status as a member of an organized crime family is not alone sufficient to support empaneling an anonymous jury, it is plainly relevant to this third factor. Edwards, 303 F.3d at 613; Thomas, 757 F.2d at 1364; Cacace, 321 F. Supp. 2d at 535; Bellomo, 263 F. Supp. 2d at 559; Persico, 621 F. Supp. 2d at 877-80. In addition to the fact that Antico has previously pled guilty to the crime of witness tampering and thus shown a willingness to corrupt the judicial process, he also appears to have influential ties to an organization

---

[3] Moreover, it does not appear that Antico genuinely disputes his membership in the Genovese crime family. At his plea before the Hon. Sandra L. Townes, Antico pleaded guilty to membership in a criminal enterprise, although he did not identify the group by name. Specifically, he stated "I participated in the operation of the affairs of a group and persons, association in fact for the commission of [racketeering and witness tampering crimes]." The government identified that criminal enterprise as "the Genovese organized crime family of La Costra Nostra." See United States v. Cirillo, No. 05-CR 3121, Transcript dated October 18, 2005, at 39.

whose members have a documented history of seeking to tamper with juries and who could provide the support necessary to achieve that objective. The defendant's contention that he "will be in jail during the pendency of this trial" and therefore "does not possess the ability to intimidate jury members himself" is thus unpersuasive. The government's proffer that Antico "remained active in running the affairs of his Genovese crew" while incarcerated rebuts this argument, and, in any event, the inquiry is not limited to whether Antico himself has the ability to interfere with the jury, but rather whether he has the power to do so through the criminal organization of which he is a member. United States v. Gammarano, No. 06-CR-0072 (CPS), 2007 WL 2077735, at *5 (E.D.N.Y. July 18, 2007) (personal involvement in jury tampering not necessary to empanel anonymous jury where other members of criminal enterprise historically have sought to undermine the judicial process); Thomas, 757 F.2d at 1365. Antico's alleged position in the Genovese family suggests exactly such an ability. Accordingly, this factor weighs in favor of empaneling an anonymous jury.

The fourth and most compelling factor justifying an anonymous jury in this case is Antico's history of "tamper[ing]...with the judicial process." Vario, 943 F. 2d at 239. This factor has been described as "crucial" to the determination to empanel an anonymous jury. Id. at 239. Here, the government notes that Antico has previously attempted to interfere with the judicial process by tampering with a grand jury witness. Antico has previously pled guilty to racketeering with predicate acts of extortion and witness tampering in this district. See United States v. Cirillo, No. 05-CR-212 (E.D.N.Y. Oct. 18, 2005); (Govt. May 12, 2010 Motion, Ex. A). In that case, Antico was convicted of obstructing justice by intimidating a witness who had been subpoenaed to testify before a grand jury. At his allocution, Antico admitted that he "knowingly and improperly

6

persuaded another person not to testify before a federal grand jury in the Eastern District of New York." Id. at 38:14-16. Prior to his decision to plead guilty, the government proffered that Antico had approached the grand jury witness, "questioned the witness extensively about information the witness had given the police" and "told the witness not to speak to law enforcement." United States v. Cirillo, No. 05-CR-212, slip op. at 8 (E.D.N.Y. Apr. 14, 2005) (Levy, M.J.); (Govt. May 10, 2010 Motion, Ex. B). The witness, whose father was a friend and associate of Antico's, had known Antico's reputation as a member of organized crime and had "feared [Antico] for years." Id. Before the witness was incarcerated, the witness overheard Antico and the witness' father, a Genovese soldier, discuss how much money the witness earned. After the witness went to jail, the father "began paying the [witness's] wife $2,000 a week essentially as hush money to keep her from testifying in grand jury." Id. (alteration in original). The defense concedes that Antico's prior admission of witness tampering is the government's strongest argument in favor of empaneling an anonymous jury but claims the conduct is mitigated by the relationship between Antico and the witness' father, arguing euphemistically that the father merely "asked for Antico's help in resolving the difficult position his son was in". (Def.'s Opposition Mem. at 8; Docket Entry 187). The defense's contention that this was not "the type of jury tampering" that warrants an anonymous jury is hardly persuasive. No jury tampering is acceptable, and the defendant's argument ignores well-settled law that a history of obstruction, such as Antico's prior conviction, is "sufficient in and of itself in an appropriate case to warrant an anonymous jury." Vario, 943 F.2d at 241.

The factor of publicity also favors an anonymous jury. Although, as defendant points out, the recent trial of Anthony Pica in connection with the attempted robbery of Louis Antonelli did not generate much attention in the media, Antico's case appears likely to receive closer scrutiny. The

government's investigation and the indictment against the defendant have been described in articles in the New York Daily News, the New York Post, Staten Island Advance and Gangland. As recently as May 16, 2010, an article published in the Staten Island Advance entitled New Dorp mobster gets 20 years, discussed this very motion to empanel an anonymous jury. Frank Donnelly, New Dorp mobster gets 20 years, Staten Island Advance, May 16, 2010. Although there is no way of knowing for certain the extent to which this coverage will continue throughout the duration of the trial, there is reason to believe that press coverage is likely to increase as the trial approaches. Because publicity may result in the identities of jurors becoming public and may increase the possibility of intimidation, pressure, and harassment, publicity is a factor to take into consideration. Vario, 943 F.2d at 240.

In sum, given the seriousness of the charges, the lengthy prison sentences that convictions would entail, the evidence of Antico's efforts to interfere with the judicial process, and the ability of the defendant to enlist the resources of the Genovese crime family, an organization with a documented history of obstructive behavior[4], this Court concludes that "[u]pon balancing the government's interest in safeguarding jurors with the defendant's interest in avoiding erosion of the presumption of innocence, the scale in this case tips in the government's favor." Thomas, 757 F.2d at 1364.

In empaneling an anonymous jury, the Court is mindful of the importance of maintaining

---

[4] See, e.g., United States v. Gigante, 982 F. Supp. 140, 152 (E.D.N.Y. 1997) (finding the evidence demonstrated that the defendant had ordered a former associate of the Genovese family to be killed after becoming a government informant); United States v. Bellomo, 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003) (describing obstructive efforts taken by a Genovese soldier to prevent a cooperating witness from testifying).

the defendant's presumption of innocence and the need to ensure that the defendant is not prejudiced by this decision. Accordingly, the Court has taken reasonable measures to prevent such prejudice, such as providing the jurors with a neutral explanation of the reasons for which these measures will be taken. In order to allay any of Antico's Sixth Amendment concerns, the Court has ordered that prospective jurors be given a detailed questionnaire, drafted with input from defense counsel. As a practical matter, the defendant is likely to learn far more about prospective jurors from the answers to the questionnaires than they would learn from the ordinary voir dire that is conducted when a jury is not anonymous. Moreover, even in a regular jury selection, the jurors are not called upon to divulge their address or the name and address of their employer. Hence, the only additional information kept from the defendants is the juror's name. At best, a name may provide an indication of ethnicity, but ethnicity is often determinable by appearance. In any event, it is an impermissible basis on which to exercise challenges.

Accordingly, this Court has ordered that the following measures be taken:

1. The names, addresses, and places of employment of the prospective jurors will not be disclosed;

2. Every morning, the jurors will be picked up by the United States Marshals at an undisclosed central location and transported to the courthouse and to the jury room of the courtroom in which this trial will be held;

3. At the end of each day, the jurors will be transported by the United States Marshals from the courthouse to an undisclosed central location from which they can depart for their respective homes and communities; and

4. The jurors shall be escorted by the United States Marshals to and from any locations at

which they may recess for lunch, when they are not lunching in the jury room.

SO ORDERED.

Dated: Brooklyn, New York
      June 11, 2010

                                                s/Hon. Carol B. Amon
                                                Carol Bagley Amon
                                                United States District Judge